IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIM YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-341-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Kim Young requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

-1-

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born November 5, 1960, and was forty-nine years old at the time of the administrative hearing. (Tr. 42-43, 121). She completed the twelfth grade, and has worked as a substitute teacher, librarian, accounts receivable clerk, and bank teller. (Tr. 57, 153). The claimant alleges inability to work since May 31, 2005, due to chronic Lyme disease, joint stiffness and pain, severe migraine headaches, memory/concentration problems, pain under her left arm, chest pains, mitrovalve prolapse, pulmonary hypertension, depression, and anxiety. (Tr. 144).

### Procedural History

On May 23, 3008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 22, 2010. (Tr. 15-31). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), and that she could therefore also

perform sedentary work. (Tr. 21). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a bank teller, accounts receivable clerk, assistant teacher, or librarian. (Tr. 30).

## Review

The claimant contends that the ALJ erred by (i) failing to account for her fatigue and diagnosis of chronic fatigue syndrome, (ii) disregarding substantial evidence as to her mental impairments, (iii) failing to including non-exertional limitations related to pain in her RFC. The Court agrees with the claimant's third argument, and the decision of the Commissioner is therefore reversed.

The ALJ found that the claimant had the severe impairments of fibromyalgia, hypothyroidism, headaches, obesity, and mild degenerative joint disease of cervical spine, as well as the non-severe impairments of anxiety, depression, and rhinosinusitis. (Tr. 17, 19). The relevant medical evidence as to the claimant's physical impairments reveals that, at least as far back as 2005, the claimant began complaining of physical pain and headaches. Originally thought to be viral, there was also some concern that the claimant had either lupus or Lyme disease but later tests indicated that she did not. (Tr. 369, 375, 392, 398-400). She was diagnosed with fibromyalgia in 2007, and went through several epidural steroid injections for pain management. (Tr . 407, 422, 459). Dr. Ronald Schatzman performed a consultative exam on September 24, 2008. He assessed her with obesity, Lyme disease, residuals of Lyme disease, and possible intracranial Lyme disease, and noted that he believed she had severe impairments secondary to Lyme disease which affected her activities of daily living. (Tr. 701).

At the administrative hearing, the claimant testified that she struggles with fatigue and joint pain, migraine headaches, and pain in her arms. (Tr. 45-46). As to her mental impairments, she testified that she has depression, and had recently been hospitalized for six days due to suicidal thoughts. (Tr. 47). She stated that before her hospitalization, she had been crying a lot, and did not want to get out of bed, talk to other people, or leave her house. (Tr. 47-48). She testified that these problems existed in 2005 when she stopped working, but that they had progressively gotten worse over the last two to three years. (Tr. 48). She stated that the things that kept her from working included her fatigue, the ability to only sit for half an hour at a time and stand/walk only fifteen minutes at a time due to her joint pain, and difficulty using her hands to pick things up or drive. (Tr. 49). As to her daily activities, she stated that she stays in bed most days and that her parents and her in-laws helped her with her children and household chores, but that she used to read, garden, visit with friends, and cook. (Tr. 50). She testified that she took two antidepressants and three antibiotics in addition to over-the-counter pain medication; she discontinued prescription medications because she could not afford them and they did not work very well. (Tr. 54).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony as well as all of the medical evidence in the record. As to her physical impairments, the ALJ noted that consultative examiners found she had normal gait and range of motion, and that the claimant did not exhibit "certain observable manifestations" of pain such as "loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, the use of assistive devices, prolonged bed rest, or adverse neurological

signs." (Tr. 29). As to her mental impairments, the ALJ discounted Dr. Harrison's report as a "transparent, self-report test which places a claimant within a generalized category, and on the basis of that always makes axis I and axis II diagnoses, always assessed a [GAF] value of less than 50, and always provide the claimants with a medical source statement which states that the person is unable to work." (Tr. 26).

In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. The ALJ's credibility determination fell below these standards.

First, the ALJ apparently rejected the claimant's complaints of pain based solely on a lack of objective support in the record. But symptoms of fibromyalgia are "entirely subjective." *See*, *e. g.*, *Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that

eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia.") [citation omitted]. Thus, the lack of significant restrictions in the claimant's gate and range of motion, for example, does not necessarily mean that her fibromyalgia and the pain it causes her are not disabling.

Second, the ALJ determined at step two of the sequential analysis that the claimant's fibromyalgia was a severe impairment, *i. e.*, having more than a minimal effect on her basic work activities. Such a finding at step two "makes it impossible to conclude at step four that her pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) [unpublished opinion]; *see also Duncan*, 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Yet he made no reference to this impairment at step four. Thus, "[o]n remand, [the ALJ] must assess the level of pain [the claimant] suffers, and determine whether there are jobs she can do with that level of pain." *Baker*, 84 Fed. Appx. at 13-14, *citing Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

Despite finding that the claimant suffered from severe pain-inducing impairments, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing impairments upon the claimant's RFC. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that

the claimant's pain is insignificant." *Thompson*, 987 F.3d at 1490-91, *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). *See also Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) (finding ALJ's step-two finding made it impossible for him to conclude at step four that claimant's pain was insignificant, and he erred by conclusively relying on the grids) [unpublished opinion]. In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490, *citing Frey*, 816 F.2d at 516. Because there was objective evidence that the claimant has pain-producing impairments, *i. e.*, fibromyalgia and mild degenerative joint disease of cervical spine, the ALJ was thus required to consider the claimant's allegations of pain and the extent to which they were disabling. Here, the ALJ entirely failed to account for the claimant's pain (disabling or otherwise) in formulating her RFC and determining what work, if any, she could perform with her level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the

claimant may perform *given the level of pain [he] suffers*.") [citation omitted].  This ordinarily requires the opinion of a vocational expert.  *See, e. g., id.* at *5.

Additionally, the ALJ erred by failing to consider the effect of the claimant's non-severe mental impairment at step four.  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

Because the ALJ failed to properly account for both the claimant's pain and her non-severe mental impairment, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's impairments.  If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 11th day of March, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma